May it please the court, Colleen Sinsdack, court appointed counsel for Mr. John Ray. I'd like to reserve three minutes for rebuttal. This case provides a prime example of the importance of defense counsel's presence in ensuring full and fair criminal proceedings. Before trial, Mr. Ray's counsel uncovered an indication that there was a monetary relationship between the state's key witness, Chris Strodder, and the police department. Mr. Ray's counsel sought discovery as to the relationship between Mr. Strodder and the police department. Both the state court and the prosecutor admitted that Mr. Ray was entitled to that discovery. However, after an in-camera proceeding in which the prosecution was present but Mr. Ray's counsel was absent, the state court determined that Mr. Ray could not have access to the evidence. That one-sided proceeding in which Mr. Ray's counsel was absent violated Mr. Ray's Sixth Amendment rights and violated the Supreme Court's precedent in chronic. But despite that plain error, Mr. Ray's appellate counsel did not even raise this issue on appeal. And when Mr. Ray raised the issue in state habeas proceedings, the state habeas court denied the claim without citing chronic, without performing the correct chronic inquiry, and without even citing the Sixth Amendment or reviewing the transcript of the in-camera proceeding. And had chronic been cited, what language do you suggest today would have been used? What specific language in chronic supports Mr. Stitt's position here today? That where counsel is absent at a critical stage of a proceeding, prejudice is presumed. And you offer that, acknowledging even as recently as March 30th of last year, that the Supreme Court requires specificity to one of its prior rulings. You believe that chronic gives the specificity that Mr. Stitt requires? I think there's a little bit more to the Supreme Court's decision in Woods. In Woods, the court held that the state court's determination could not violate clearly established law or could not be contrary to, pardon me, clearly established law. Where in that situation, the state court had applied chronic and had determined that there was not a critical stage at stake. In this case, however, the state court did not apply chronic and did not apply the chronic inquiry. So the correct Supreme... I may interject just at this point. Are you saying that because the state court didn't articulate chronic, didn't use the name of the case? If not just that, say what else you mean. No, this isn't a magic words doctrine. What I'm looking at is the Supreme Court's opinion in Lafler v. Cooper. And in Lafler v. Cooper, we had a similar situation where the state court there was confronted with an ineffective assistance of counsel claim. But the state court did not apply Strickland. And, in fact, what the Supreme Court said is it clearly wasn't applying the correct inquiry because the defendant had alleged that he suffered ineffective counsel at the plea bargaining stage. And the state court essentially skipped a step. It said, well, the plea was knowing and voluntary. So the claim should be dismissed. And the same thing occurred here. Mr. Ray raised a chronic claim on state habeas, but the state habeas court simply said, well, the evidence was irrelevant. But, of course, the only indication that the evidence was irrelevant was the result of a one-sided proceeding in which Mr. Ray's... which was a chronic violation. So that's plainly the incorrect inquiry. And so it's not a sort of magic words doctrine. But the problem here is the state habeas court didn't cite chronic and didn't ask the chronic question, which is, were there significant consequences to the hearing at which Mr. Ray's counsel was absent? Is this a stage at which rights could be preserved or lost? If it had applied that inquiry, the answer would have been yes. But it did not. And because it did not, as the Supreme Court explained in Lafler v. Cooper, it is up to the federal habeas court to review the claim de novo and to decide it as a matter of first principles. So the critical issue here is that the state court did not either refer to chronic or apply any chronic type of analysis, but rather applied this standard that it wasn't relevant, which is really a catch-22 kind of situation. And the critical feature then is this takes this out of the question, is it an unreasonable application of a specific precedent? That's exactly right. But makes it more the generalized chronic question, is this, in our opinion, a critical stage when they're having an in-camera hearing on what does this witness, who's a critical witness in the case, say happened and the relationship of that witness to the police department of Romulus? Exactly. So AEDPA is satisfied. And this court decides the legal question as a matter of first principles, as the court said in Lafler. And as a matter of first principles, this court can look to its own precedent in United States v. Minsky, where this court made very clear that where the prosecutor and the state discuss potential impeachment evidence without the presence of defense counsel, that's a critical stages error and a chronic applies. Does it matter that the question whether or not the evidence was his rights and the evidence were irretrievably lost? In your client's case, he still could have inquired at trial and had folks under oath about that relationship. I think actually he could not. Right before Mr. Stratter testified, there was a lengthy colloquy between Mr. Stratter, sorry, not Mr. Stratter, Mr. Ray's counsel and the court because Mr. Ray's counsel had independently discovered potential evidence that Mr. Stratter was serving as a witness in another trial. And so he was again attempting to argue that he wanted to question Mr. Stratter about his relationship with the police and the potential that that relationship might suggest problems with his credibility. And the state court refused to allow that line of questioning. And ironically, in part, it said that he hadn't adequately substantiated that there was this relationship with the police. Well, of course, he hadn't adequately substantiated it. He was denied the evidence that could have done just that. So I think he was actually denied the ability to question Mr. Stratter on that. But you're talking about on another point. No. What's your relationship with the do you get money from the police? Wasn't it that he got paid off for tipping? So that was that was what the note suggested. But because the court had held that there was no relevant relation, he he Mr. Ray's counsel believed that he could not simply question on that because there had been a relevance determination. But he repeatedly attempted to gain access to those records and to bring that back up. And what I'm saying is that in that colloquy before Mr. Stratter's testimony, he wanted to bring up exactly this, the relationship between Mr. Stratter and the police. He wanted to question Mr. Stratter about it was about another case. Is that is it tied to another case? I thought that's what you just sorry. But but it was. But in general, what Mr. Ray was Mr. Ray's counsel was seeking before this in-camera proceeding was just evidence about the relationship. But for you to tell us he was generally seeking and you know that. Does that get us very far? Well, you have to point us. Is there exact? Where will we go to find that? I'm a little worried about hearing you say, well, what he was trying to get at. Well, no, there is a note in the in the record that says that there's a that Mr. Ray's sorry, Mr. Stratter continues to call the detective for money. And so Mr. Ray's counsel sets out very clearly what discovery he would like as a result of that note. And it's essentially evidence of the history between Mr. Stratter and the police department on the theory that if if Mr. Stratter is regularly serving as a paid informant, not simply in this case, but in other cases, or there's there's a lot of allegations that Mr. Stratter is involved in the drug trade. If there's a relationship there based on Mr. Stratter attempting to obtain favorable, favorable, a favorable look from the police, that any of that would serve as impeachment evidence. And again, the state court and the prosecution admitted that Mr. Ray was entitled to that evidence. And it's simply that after the in-camera hearing and we don't know what was said there and we don't have the records, although those those apparently exist, the transcript does exist. After that, the court said, no, you can't have access to that. And so before the Stratter testimony, what essentially happened is Mr. Ray's counsel was trying to get at it another way. He thought he had evidence that suggested something about this relationship that he'd been denied discovery from the state on. And so he tried to raise that and he actually did, to your point, say, well, I think at least this would should give me the good faith basis to get a hold of those records from the state. And the state trial court said, we're not in discovery anymore. Counselor and said, you know, you're speculating. So I think I think that that Mr. Ray's counsel did make every effort to to bring this issue up. But the in-camera hearing prevented him from doing so effectively. Would harmless error analysis apply even if we agreed with your position? No, under under chronic, there is no harmless error analysis. And I think Van, this court's opinion makes very clear that there is no harmless error analysis under chronic. Is there a Supreme Court case on that topic? Well, chronic itself says that prejudice is presumed. So that that really means then that there would not be ever any harmless error analysis because it would be in conflict with the basic doctrine of chronic. Under chronic, that's correct. If EDPA deference does apply, there would be no evidentiary hearing. Do you agree with that? And if you don't, explain. So I think there's a second reason that EDPA deference might not apply. If this court were to say, or EDPA, I should phrase that differently, EDPA could be satisfied. If this court were to say, well, how can we possibly decide this issue without, for example, the transcript of the in-camera proceedings? Then it would, of course, be unreasonable for the state court to have made that determination without reviewing the transcript, which apparently it did. And therefore, that would satisfy EDPA, the 2254D prong of EDPA. And once that prong is satisfied, we then go into the other EDPA prong, which is, when can you have an evidentiary hearing? Well, you can have an evidentiary hearing where the defendant has made consistent efforts to obtain the evidence during state proceedings, which occurred here. And therefore, the evidentiary hearing would be permissible. So which state courts saw the transcript? The only state court that we know, and it appears the only one, is the state court that made the determination, the in-camera determination. They presumably didn't get a transcript. Right, sorry. They saw it live. So a transcript was made, but according to your best understanding of the case, no court, state or federal, has seen this. Exactly. So at the state habeas level, Mr. Wray sent a letter to the judge, or Mr. Wray's counsel sent a letter to the judge asking about the transcript. The judge's secretary said, there's a transcript. Only the court of appeals can get you that. At the court of appeals level, Mr. Wray said in his pro se filing, there's a transcript, that transcript is necessary. The state habeas appellate court simply denied it, denied his petition. Mr. Wray made the same request at the state Supreme Court level. Thank you. Thank you. Good morning. May it please the Court, Bruce Edwards, Michigan Assistant Attorney General on behalf of the warden. I take strong exception to counsel's arguing that this court should be engaging in de novo review. That argument was never made to the district court, and it was not made in the original brief that the petitioner filed. It was only made in the reply brief. Judge Pearson, I believe you brought that up in an earlier case this morning, how it's not fair to raise an argument in a reply brief for the first time. I would cite to you page 13 of the initial brief Mr. Wray filed, where it says Wray must show that his state court decision resulted in a decision that was contrary to or involved an unreasonable application. And then I would also refer you to page 41, where it specifically says the decisions of the state court should be viewed as merits determinations. So in the initial brief, they said yes, AEDPA applies, and yes, this chronic claim was decided on the merits. They should not be able to change their argument and present an argument now that they did not make below or even in their initial brief. They did make it in the reply brief. That's correct, Your Honor, and this court routinely rejects arguments that are raised for the first time in a reply brief. My office has learned that, and, you know, there's many cases where this court has said what you didn't argue below, you're not going to be allowed to argue above. Is it something that you're prepared to discuss during the oral argument here? Well, sure, but it is, you know, unfair, and I would remind the court that there are several cases where you said you will not consider these new arguments, you know, when the case goes forward. So understanding that your position is as you have expressed it, what is your reaction to the argument on the merits? Well, the trial judge, keep in mind, this was a partly pro per motion for relief from judgment and partly assisted by appointed counsel. There were 11 separate claims. There was an earlier claim that by failure to turn over these alleged documents involving Mr. Strader and the Romulus Police Department, it was a violation of, you know, you've got to turn over documents that might be exonerating. That earlier argument had been made. This was a slight variation on the claim that, well, we should have had somebody in the room when you were looking at the documents, Judge, and the judge, he may have conflated those two claims a little bit, but he did deny it on the merits, and when you deny a claim on the merits, you are entitled to a pedeference, and they conceded as much. What about the argument that they're making that Lafleur is specifically applicable to this situation, and Lafleur said no pedeference? Yeah, I don't see how Lafleur applies at all. The facts in that case were totally different, and, you know, they have argued that really what happened here was a violation of White v. Maryland, Cronic, and Belle V. Cohn. Now, as for White v. Maryland, that was in 1963, obviously pre-EDPA. It was a death penalty case. It was a direct appeal case. What happened in that case was nothing like what happened in here, and then you go to Cronic. In Cronic, there wasn't even a missing attorney. It was a footnote that just looked at earlier cases that said, well, sometimes, if there's a critical stage and the attorney's not there, we can assume prejudice. In Belle v. Cohn, once again, there was no missing attorney, and relief was denied in Cronic to the petitioner and in Belle v. Cohn relief was denied. The most applicable case, which Judge Pearson made reference to, is Woods v. Donald, and in that case, the United States Supreme Court unanimously held that you shouldn't look at the issue at too high a level of generality and that when the precise contours of a right remain unclear, courts have broad discretion. But the language I would really cite is, it says this, it says, all that should have mattered to the Sixth Circuit is that we have not held that Cronic applies to the circumstances presented in this case. That exact language applies here. In my brief, I laid out... But that's assuming that we are bound by the part of EDPA that says, was it an unreasonable application... Yes, it is, Your Honor. ...of Supreme Court precedent. That's correct, Your Honor. And that line of cases, definitely Woods v. Donald is dealing with a Cronic type of situation. But I guess the question that I have is, given that there's the right to counsel in the critical stages, and this is a hearing on whether really a key witness is going to be able to be impeached on the basis of a relationship with a police department that is at least suggested by this note, the detective's asking when he's going to be paid, it would seem that under a certainly fair or possible reading of Cronic that this is the deprivation of counsel at a critical stage. And isn't that a serious problem for your side? Well, for example, in Minsky itself, it says an ex parte hearing can be justified by compelling state interests. In United States v. Carmichael, it says not every time that the judge and the prosecutor have an ex parte hearing is at a critical stage. So there are six circuit cases that even suggest that this is not necessarily a quote-unquote Cronic error, even though Cronic didn't involve a missing lawyer, but the Cronic rule is how we refer to it, I think. So would that not suggest, then, that there should at least be an evidentiary hearing? And the fact that there is this transcript is of interest. I don't know whether that would mean that the first stage would be to have simply disclosure of the transcript as opposed to having an evidentiary hearing in district court, but your opponent was addressing some of that in the end of her argument. I cited in my brief the case of Ballinger, where it says even though it might be really nice to see what else was there, even if a petitioner tried to get it so we could see it, it's precluded by Penn, Holster, and Harrington. The federal courts just can't do that. It would be nice for you to know this, perhaps, to be able to see what was on that transcript. It's never been transcribed. It wasn't anything in front of the Michigan Court of Appeals or the Michigan Supreme Court. You just said it wasn't transcribed? That's correct. That's what the letter from the judge's secretary says. I thought it said that it was transcribed. It says it was recorded, but it's sealed. So I assume that it could be transcribed if they still have the recording, but this was 12 years ago, so I don't know if they can find something like that or not. But the Ballinger case suggests that the federal courts can't look at something that the state court didn't have in front of it or can't expand the record. Mr. Thompson, may I ask? It seems to me that the strongest point Mr. Ray may have is that the state court missed or misidentified the correct legal principle. You heard the banter that I had with Ms. Senzak that the word chronic wasn't used. She assured me we're not arguing just the magic word, but we just think the state court missed it. And if it was missed as a chronic issue, meaning a critical stage where counsel should have been present, could you speak to that? Because I think you'd agree the language is somewhat regrettable. It doesn't mention chronic. It doesn't mention, pardon me, not chronic, but critical stage. And there is the concern that perhaps the state court just focused on it being irrelevant and used that alone as a basis. Right. You know, the case law says that even if the state court doesn't know the name of the relevant state case, that doesn't really matter. All that you look to is whether or not the result they reached violates the clearly established Supreme Court case law. So there was a Seventh Circuit case that says the state court can say, we're deciding against the defendant because the tariff cards told us to do so, and the Seventh Circuit said that we would just ignore the reason given and then look to see if there were other reasons that would have been proper had they been given, and if they exist, we will deny relief. So the fact that the state court identifies perhaps the wrong test really doesn't help the defendant because the defendant has to show the petitioner that what happened is contrary to our non-reasonable application of the correct case, even if the correct case isn't cited. But what about Lafler? So Lafler has this statement, By failing to apply Strickland to assess the IAC claim, the state court's adjudication was contrary to clearly established federal law, and in that circumstance, the federal courts in this habeas action can determine the principles necessary to grant relief. See Panetti. But even if this court does look to the principles, the principle is chronic, the principle of chronic, and then we go to Minsky and Hereford and Carmichael, and they all say that there can be circumstances where it's not a violation of a critical stage for there to be an ex parte conversation. So why could this thing, this interchange, regarding Staudter, be not a critical stage here, when he's the key witness? He's one of two key witnesses. Ebony Booker was another key witness. She personally identified Mr. Ray as one of the people that was there that held them at gunpoint while the other two defendants were in the house and murdered two people, including a woman who was four months pregnant. So there are definitely two full witnesses, and really, I mean, and I did put in my brief that post-chronic, we have the decisions of Satterwhite v. Texas and Davis v. Alaia that applied a harmless error test to a critical stage violation. So you have two eyewitnesses. So let's say they were able to establish to the jury that one of the two key eyewitnesses, he's cooperated with the police in the past in a totally unrelated case. I don't know how that makes him not credible. He was a victim in this case. He was assaulted, he was robbed, and only because the gun misfired or it was empty, was he not also hit by a bullet. How do we reconcile the presumption of prejudice, the chronic rule of presumption of prejudice with those cases you just cite, Satterwhite, that say it can be harmless? That's something we struggled with earlier. Satterwhite basically says the error has to permeate the entire trial, and this error didn't permeate the entire trial by any stretch. I mean, more than one person identified the defendant, the defendant and his cousin, or they were some sort of a shirt-skin relative. He knew the fellow. When they went to him, he immediately said to the police, you better talk to my cousin. So it doesn't permeate the entire case at all. There's no reason. I mean, Mr. Strutter was not an upstanding citizen by any stretch. The reason they chose to rob him was because he was reputed to be a drug dealer who carried a lot of cash on him. Now, I don't know if he had cooperated with the police or not. We don't have that transcript. I'm not aware of what happened 12 years ago when they had this brief ex parte meeting, but it is my contention that if you apply Woods v. Donald and you look to the Ballinger case, and then there's another case that this court just put out after I filed my brief. It's Coleman versus B-E-R-G-H, and that's the normal spelling of Coleman. It's a published case, 804-F3-816. In this case, the Sixth Circuit granted a certificate of appealability to decide whether a critical stage occurs when there's an oral motion for a new trial after a conviction. And the Sixth Circuit said, we never even should have granted a certificate of appealability. They vacated their certificate of appealability because the United States Supreme Court had never said that such a hearing was a critical stage. Mr. Wray's counsel has correctly conceded that the U.S. Supreme Court has never said an ex parte in-camera hearing is a critical stage. There's Carmichael from the Sixth Circuit that says it isn't. There's Hereford that says it isn't. And then there's Minsky that has some mixed language. It may be, but it can be justified by a compelling state interest. That's hardly something that is a, you know, you've got to grant relief kind of a scenario. This has not been an extreme malfunction in the slightest. The claim was rejected on the merits, even if they didn't cite the name of it. And the name was in front of the Michigan Court of Appeals and the Michigan Supreme Court, and they denied leave as well. So even if the state judge overlooked it, I don't know that he did, but even if he did, the Michigan Court of Appeals and Michigan Supreme Court had the name chronic in front of them, and they denied relief. They are not, we're not required by the federal constitution to grant relief. So I would ask that you would affirm the district court. I would specifically ask that you not allow an attorney to put a new argument in a reply brief. That's just not right. That's not fair, and there's plenty of cases from this court that says you review the case that existed in front of the district court, not the better case that was presented on appeal to this court. So I ask you to affirm the district court's denial of habeas relief. Thank you very much. Thank you. First, to address the waiver point, I think there are two reasons this is certainly not waived. This court and the Fifth Circuit more recently, citing a numerous Court of Appeals precedent. Are you talking about the briefing? Pardon? Yes, the briefing has stated that you cannot waive the standard of review, particularly in an AEDPA case. And what the opposing counsel is now arguing is that the standard of review has been waived, but that simply isn't possible. What case do you cite for that? So most recently, the Fifth Circuit in Ward v. Stevens, which is 7- Was it a similar circumstance where there was a briefing oversight? In that case, it was an exhaustion dispute, but Ward v. Stevens actually cites an earlier Sixth Circuit case, Brown v. Smith, where the defendant had not raised before the district court the issue of whether or not there was edpedeference. The court said that's regrettable, but you cannot waive the standard of review. We have to decide the standard of review. It's up to us. Of course the court would apply edpedeference. Pardon? And it did not apply edpedeference. Oh, really? Brown v. Smith, do you have a cite for that? Yes, it's 551F3D424. It was overturned on other grounds by the Supreme Court, but not on that ground. And again, Ward v. Stevens cites it as good precedent, and it cites a number of precedents from other circuit courts of appeal to the same effect. I would also note that the state brought up in its response brief that the state court's determination could not possibly be contrary to established federal law because there was no Supreme Court precedent on point. It was then incumbent on us to correct that error. There are two ways in which a state court's determination can be contrary to clearly established federal law. One is the way discussed in Woods. The other is the way discussed in Lafleur, and that is what is at stake here. And under Lafleur, it is the case that when the state court has applied the wrong inquiry, has applied the wrong governing precedent, has not applied the Supreme Court's governing precedent, then the state court's determination is contrary to federal law, and the appropriate step, therefore, is for this court to determine the legal issue as a matter of first principles. But, I mean, the language of Lafleur suggests that if the state court applied, if the state court looked at the matter, as in our case, and used irrelevance, is that what Lafleur's targeting when it says use the wrong precedent? It seems more like where the court is using Strickland and it's chronic or it's some gross error. What happened in that case is it had identified an ineffective assistance of counsel claim and it had simply undertaken the wrong inquiry, which is actually a little bit more than we have in this case where they don't even identify the chronic claim. But decided on an alternative feature. It didn't identify the chronic claim but ends up saying it was irrelevant in terms of a harmless error. Which is not permissible under chronic. So, again, it's simply the wrong inquiry, and where it's the wrong inquiry, then we have de novo review. I know that I suggested to Mr. Edwards that it might have been missed or the wrong inquiry, but now I suggest to you maybe it was just overly broad, meaning to use the language used by the state court that it was irrelevant evidence, not admissible for any purpose. Irrelevant evidence, not admissible for any purpose, when we know that we're speaking about that which took place in camera, was recorded and under seal, doesn't necessarily mean it's been missed, but it's just in there and wasn't specifically articulated. If you can just say something to help me with that. The issue is the only finding we have on relevance resulted from the one-sided hearing. So if the state court was relying on the fact that there was a finding that the evidence was irrelevant, which it appears to have done, then it was relying on the result of a one-sided hearing, which would be the equivalent of saying, yes, counsel was absent during trial, but the defendant was found guilty, so there must not have been a problem. It's the same fallacy, and I think, therefore, it's another reason the inquiry was simply wrong. Your opponent mentioned several cases that he said showed that harmless error analysis would apply. I think Satterwhite or something like that was one of them. Satterwhite was a 1988 case in Bell v. Cohn, a far more recent case. The court again reasserted that where counsel is absent at a critical stage, one with significant consequences for the defendant, prejudice is presumed. He also mentioned Davis v. Ayala. In Davis v. Ayala, the defendant had actually conceded that harmless error analysis applied, that this was not a sort of chronic situation. It was not a structural error. So that certainly does not indicate that when it is a chronic error, harmless error analysis could apply. Thank you. Thank you both for your argument. And Ms. Sindak, I understand that you're appointed pursuant to the Criminal Justice Act, and we thank you very much for your representation of your client in the interest of justice. Thank you both for your argument. The case will be submitted.